We'll call the next case United States of America v. Lopezetal. And we have here Ms. Vaughn-Hawk. Van Hoek, may it please the court. Lisa Van Hoek. Lisa Van Hoek. I would like to reserve three minutes, if I could, for rebuttal. That request will be deferred to defendants, Eralucia Esparza-Diaz, Brito Hernandez, as well as my own client, Jose Lopez, in support of the constitutionality challenge to the fast-track program as it has been applied. I'd like to start by observing at a visceral level the fast-track program as applied, which strike anyone as fundamentally unfair. This is a program that takes defendants committing similar crime, be it the same crime with very similar or even the same backgrounds and records, and gives them very different sentences. For no other... Ms. Van Hoek, there are several circuit judges around the country who evidently don't have the same visceral reaction that you do, because they've said, on an equal protection ground, which is essentially the argument you're articulating right now, there's a rational basis for the program to employ the resources the way it has. So, I mean, evidently not everybody would agree with that, but it does lead me to ask you, are you making an equal protection challenge here? I am, Your Honor. We have couched it in the briefs as a due process, an arbitrary sentencing process argument, but Chapman, the United States Supreme Court in Chapman, has held they are identical in this context. That's the question. Is there any difference between the equal protection and the due process argument? No, there is not. And if we're in the due process, we have to have a shocking standard, is that correct? In this context, it's identical to equal protection, and the government action would survive unless there was a rational relationship for the government action. Does a shocking standard come into play here at all? No. No, I do not believe it is so. In Chapman, the United States Supreme Court, it's cited in my brief, I believe also in the government's, that case explains in this particular context when it's an arbitrary sentencing process, there is absolutely no distinction between that and an equal protection argument. There's a question here as to your standing to claim this in the first place. Are you claiming someone else's rights or why don't you articulate something on standing? I will. In the first instance, I think that the government's standing argument here mistakes our rational basis argument for an attempt to assert our injury in fact. When in our brief, we explain the statistics throughout the country, districts that have fast-track programs, despite an underwhelming amount of immigration caseload and the others, that goes to demonstrate a lack of a rational basis. The injury... Having stated that, both in your brief and now this morning, how is your injury redressable? What are you asking for? Your Honor, the relief here is obviously if the court grants the constitutional argument, it's an extraordinary relief. What is it? The redress would be to go back and as the policy stands now, if this policy was not to change as it's applied for these four defendants or any defendant in a district without a fast-track program, if that defendant can demonstrate the similarity in all instances to a defendant in a fast-track program, then a variance, the failure to grant a variance would be an abuse of discretion because it would be unconstitutional. With the caveat, and I appreciate that is an extraordinary remedy, with the caveat that obviously sentencing is an individualized process. I don't see in your brief that you're arguing that there should be fast-track in New Jersey. You're in essence saying that there shouldn't have been fast-track in Nebraska, there shouldn't have been fast-track in the Western District of Washington, and there maybe should have been fast-track in Nevada based on statistics. And I don't see how that gives you standing here. Your clients are not from Nevada. At least they aren't being sentenced in Nevada. You know, I don't see that you requested that in your brief. All you asked for was to be resentenced. Your Honor, I believe in the point headings of the brief, if I may, that it's unconstitutional because it violates Mr. Lopez in my... So you want 5K31 to be declared unconstitutional. I mean, you're not putting yourself in Nebraska or Texas. Absolutely not. You're asking us to declare 5K31 unconstitutional. As applied. If we do, and it's remanded for resentencing, what occurs then? When any of these four defendants would be remanded for resentencing, the burden would be on all four defendants to show that, but for geography, they would qualify for a fast-track departure. I'm not sure I follow you because if we declare the fast-track unconstitutional, isn't the other people got a benefit they shouldn't, not that your client gets a benefit that he shouldn't? In other words, what difference does it make to your client if all those other people were sentenced wrongly? If the going forward relief is, now everybody will be sentenced without regard to fast-track, isn't your client in exactly the same posture? We're not asking for the fast-track program or the policy to go away as it's applied currently. The uneven application of the fast-track policy is resulting in a disparate impact which we suggest rise to the constitutional challenge. So how can that be? How can it be? You seem to be saying, and Deidre opening remarks were pretty passionate, that it's got to be the same everywhere in the country, right? If it's, and isn't that in essence saying there can be no such thing as a fast-track program? There either has to be everybody sentenced at the low end like fast-track or everybody sentenced without regard to fast-track, right? What I think I'm saying, yes, but that every person should be, a fast-track departure should be available to all defendants. The fact that it's available does not mean that it necessarily is granted, nor does it mean that you qualify for it. Well that just seems like a non sequitur. Then it's not fast-track, then it's just a new lower sentencing guideline period, right? Isn't that what you're really arguing for is make everybody, make the whole United States sentence people at a below guidelines range? Give it a new, make it effectively a new guidelines range without the benefit of going through the sentencing guideline, the Sentencing Commission. I don't, and I would start by saying in the first instance I think that fast-track doesn't describe the federal sentencing process or the plea colloquy or the decision to go to trial or not. What makes it fast-track is that, well what makes it fast-track is not whether or not they get it, excuse me, it's the fact that they're not filing motions. So if everyone, and they're not, they're consenting to detention, they're waiving appellate review, they're waiving collateral challenges. So their process is streamlined. So if everyone is available to have a streamlined, streamlined through the federal sentencing, through plea through sentencing, then everyone is fast-track. It doesn't make, it doesn't slow the process. Your clients don't care about whether they go through fast or not, do they? They want the lower sentence. Isn't that what's going on here? Absolutely. Okay. Yeah, but listen, before we get to sentencing, before we sentence anyone, let's see if it's constitutional or not. The only reason you articulate is because of loads of immigration cases in different districts. But that's not, according to the Attorney General, the only reason why they make a difference in having fast-track or not in Nebraska or wherever else they're having it where there's not or is a big immigration docket. They claim that there are other reasons why they have fast-track, namely, I mean, they could be a plethora of reasons, the availability of enough AUSAs, the availability of judge power. And wouldn't these also be considerations that the AG could make in determining which pilot districts will be granted fast-track and which won't be? Would they be legitimate and would that be a violation of due process? I believe what Your Honor is asking is that would that be a rational basis? Yes. And therefore, would the constitutional claim fail? Yes. I would answer the constitutional claim would still fail. It should be considered an irrational basis because this is a very unique circumstance where a guideline is importing this disparate treatment, which it does in no other context. So I think that what is a rational explanation needs to be put into context. And the context here is that we have a sentencing guideline and the sentencing commissions sanctioning this type of disparate treatment despite the  But can't the Attorney General, for a variety of reasons, say I'm going to try fast-track in ABC district but not XYZ district and I have reasons and maybe you and I don't agree with those reasons, but this is a reason we want to use it in Nebraska or don't want to use it in Nebraska and why we'll use it in Texas. In other words, as long as there's a If there is a rational basis, yes, that would defeat the constitutional claim. Well, is that what you have here? Have the AG making decisions as to various 94 districts that we're going to use it in some and not use it in others and test how the prosecution flow goes in all these various districts? I disagree with that's what we have. What we have is we don't have a lot of information. The information is difficult to get. But what we do have is there appears to be, as this court in the first time Era Lucia was here commented, and certainly never reached any issue and we're not suggesting that, but the court commented that it doesn't appear to be any clear reason why to the Era Lucia panel. There was no reason. It didn't seem clear why some have it and why they don't. But what we have are these statistics that make no seemingly make no sense. It's a statement about statistics, but what Judge Cowen is pointing out, and I think you're hard pressed to disagree with it, is that statistics aren't the only thing that the AG is looking at, that is prosecution statistics. There are other kinds of resource issues that could rationally be taken into account and the Department of Justice has been explicit about that. I mean they've said there are other things that we could be looking at dealing with resource allocation. The Ashcroft memo says exceptional circumstances such as, so absolutely. And Era Lucia Zamudio didn't purport to address those in any way shape or form did it? No, absolutely not. In fact, Era Lucia Zamudio says you could, under a Kimbrough kind of analysis, take disparity into account, but you don't have to. Now how could you square a holding like that with the assertion that it's unconstitutional? I don't believe the constitutional argument was before the court in Era Lucia and it's before the court now. Now did you raise that issue here, reminds me, did you properly raise the constitutional issue in the district courts? We will concede that plain error analysis applies here. Does it make any difference here? Does it really make any difference? I don't think it does because if the court believes that this to be an important right, then I believe that plain error analysis would be appropriate. And if we don't find it, then it's your line. I don't think, it's an important issue and I don't think that the analysis of the error, which we do concede is plain error. All right, we'll hear from Ms. Lewis and we'll hear from you on rebuttal. Thank you. Thank you. Good morning. My name is Lisa Lewis. May it please the court, I'd like to reserve one minute for rebuttal. I will be arguing only part three of the appellate brief on Mr. Pedro Esparza Diaz and that issue applies solely to him. The issue in that section of the brief comes after the court, the district court, after the guilty plea to an illegal reentry under 8 U.S.C. 1326 in a sentence of 60 months. Mr. Esparza Diaz contends that the district court sentence in his illegal reentry case was unreasonable because the sentence was based on clearly erroneous facts, excuse me, clearly erroneous factual finding. These clearly erroneous findings led the court to deny Mr. Esparza Diaz a request for a downward variance due to the time he spent in custody while he was awaiting indictment on the illegal reentry case. I thought that the district judge said, I think there's some merit to your lawyer's argument, Mr. Esparza Diaz, and so I'm going to sentence you lower in the guideline range. What's wrong with the district court saying, well, there's some merit to the argument, I'm not buying that you get a variance, but I'll give you some break. What Mr. Esparza Diaz was asking him was to find that, in essence, that a criminal prosecution had been initiated, had started, that there was a clear intent of the ICE officer to go forward with the prosecution. And what Mr. Esparza Diaz used to illustrate that was a sworn statement that was taken. Sure, we're familiar with the facts. My question to you is, you're asserting that the judge found as a fact that there wasn't the start of the prosecution, and I guess what I'm wondering is, when the district court judge says he's sentencing him, I think there's some merit to your argument, so I'm going at the low end of the guideline range. What's the clearly erroneous fact that's been found under those circumstances? Well, what the judge is saying is that, and what he said in the record was that, he is considering the fact that Mr. Esparza Diaz has spent some time in custody prior to the initiation of the prosecution, and he's taken that into consideration when sentencing him. But earlier, before he made that conclusion, he goes in further and states that the record is not, that he is not convinced that, in fact, the record clearly states that prosecution was to begin because the U.S. Attorney's Office was still taking time to review the case and investigate, etc. So the U.S. Attorney's Office could have said, we're not going to press charges, right? They could have said that, and we wouldn't be here today, Judge, but I would akin this case to a matter, for example, where a police officer observes someone arrested on the street, they take them into custody, they observe them commit some type of felony, they take them into custody, and they begin to further investigate and prosecute the case. The prosecutor's office has not actually accepted the case, but no one here would question that defendant should not receive time credit for every single moment that they have been in custody after that arrest when it's clear. And in this case, the record clearly indicates the officer's intent to prosecute him on either 1326 or 1325. That sworn statement asks Mr. Esparza-Diaz basically every question and establishes every element of the offense. In addition, attached to the sworn statement is a Miranda warning that Mr. Esparza-Diaz signed, which gave him warnings that he had the right to remain silent, that he could be appointed an attorney if he could not afford one, etc., etc. If that is not the beginnings of a criminal prosecution, Judge, I don't know what else is. Other cases, what we were trying to do in bringing this matter to the district court was to avoid what happened in several of the civil 2241 cases that we cited. And that is our clients, after sentencing, having to go through the process of getting these credits as a result of, you know, because of the fact that the BOP program statement will not allow it. Judge Kugler's statements make it unclear whether or not he actually found that Mr. Esparza-Diaz established the facts that would support him getting the time credit. Had he made that finding, he would then state what his sentence should be and then credit him the four months accordingly. Now Mr. Esparza-Diaz is left with the sort of in a difficult position because can he now go to a judge after this appeal on a 2241 petition and say, I should get my four months? Did Judge Kugler give him one month? Did he give him 60 days credit because of that time that he spent waiting for the indictment? It's unclear, Judge. But the record does show. I understand your argument. All right. We'll have you back on rebuttal. Thank you very much. Ms. Sadlowski. Your Honor, it's Caroline Sadlowski appearing on behalf of the United States. As we indicated in our response briefs, defendants have not met their burden either to show standing or a violation of the defendant's constitutional rights. Well, assuming that what they claim, that the only reason for the disparity is the volume of immigration cases and nothing has been put forward that would indicate a violation differently, why doesn't that mean that in different districts, criminal defendants for the same offense are being treated differently? Isn't that some sort of violation? I mean, it's interesting. In their briefs, they state, and I'll cite the Lopez brief. All the briefs are substantially similar, but on page 10 of the Lopez brief, the defendants indicate that this policy makes sense. And so our understanding is that they're not challenging the policy at large. They're challenging its application in districts other than their own. And so therefore- They're challenging that they're being treated differently by the government than defendants in other districts, but they're not looking for relief in other districts. They're looking for relief in their district. And well, let me answer straight up. What is the reason for this disparity? Is it strictly that the load of immigration cases in some districts? If that's the case, then there is some absence of rational reason for the disparity. Well, I mean, I think they've admitted that the policy makes sense, that there would be a good reason for the government to have the policy in some locations. And it's not just about geography. It's about the burden of cases in those districts and not in others. And here, they can't show injury causation or addressability because even if they are right that, and we accept the facts as true, that in Nebraska or in Washington, this policy is irrationally implemented, if that were rectified, it wouldn't change anything about New Jersey's circumstances and whether they would be- We would have a policy. We would apply for a policy. They would be able to apply under that policy for fast-track status. We would grant them that. What if we said that we think this policy is unconstitutional? What would be the redressability? Yeah. We said this policy was unconstitutional. What would happen to these defendants? Forget about what the Attorney General and the Justice Department are going to do with the fast-track policy in general. But what would happen with these defendants? I would think that these defendants would, again, not be eligible for any kind of relief because now there's no more fast-track policy. Well, but wouldn't they at least be able to say, yes, but we have this list of people who in the 25 districts where there is fast-track that received lesser sentences than what we're getting. Wouldn't they be able at least to point towards that, to all those statistics and say, you know, to rectify this constitutional violation, we should get less than what you originally gave us? But their injury in that case would be that some other people got a relief they shouldn't have. And so now you're saying we're putting an end to this. This is unconstitutional. We won't do this anymore. But that doesn't leave them in any different circumstance. They didn't get a windfall in the first place. They don't get a windfall now. Doesn't at least leave them with some unconstitutional disparity data to cite? Well, Your Honor, it's possible that they could say to the court, you know, other people got a windfall that I didn't get. But this court does not grant standing to defendants to rectify a windfall that someone else was granted. Well, we would say that 5K3.1 is unconstitutional. Remand for resentencing. Yes. On that remand, couldn't a legitimate argument be made by the appellant that they want treatment other than has been prescribed for them? Well, our position is that they couldn't. That basically they weren't, that their only injury is that other people are considered for this and they're not. And if you mandated even that the government give them, engage in the fast track policy and give them a fast track plea and then recommend to the court that they therefore should be received this, some kind of downward variance, I don't know how much it would be. I mean, there's several levels of discretion that are involved and then the judge would have to exercise his discretion. That's what, that's the most they would be entitled to is some kind of participation in a discretionary process with several levels of discretion by different decision makers. And that, again, is too speculative to grant them remand. Isn't there, what do you say in response to the parsimony argument that has been put forth? I understand one of their assertions to be clearly the lower sentences that are given under the guideline range, under the fast track program are the appropriate sentences because the government wouldn't be giving less than was necessary. But by law, the government's not supposed to be giving more than is necessary. So if they're giving less in other districts under the parsimony provision, they should be giving that lesser sentence everywhere. That's only right and fair according to the statutory parsimony direction. What's your response? The government rejects that argument because there are many considerations that go into the government's decision to grant that kind of relief that aren't at play in these districts, such as New Jersey, that are at play where it engages in a fast track program. And so it isn't a righteous sentence strictly based on the defendant's conduct, but also based on several considerations to do with the use of resources in those jurisdictions that make this sort of the best compromise for everybody to make this, to make sure that these crimes are prosecuted as best we can. But those resources, those resource decisions are not implicated here in New Jersey. And so to suggest that our decision in those cases with different considerations would be applicable here and dictate a lower sentence. How do those considerations which lead to the granting of fast track by DOJ have anything to do with greater than necessary to meet the goals of 3553? I don't, I honestly don't think that they should. That they should what? They don't have that, the greater than necessary goals. The parsimony provision has no bearing on the DOJ's decision to grant fast track. I agree. That's what I said. Yes. But I think what Judge Jordan was asking you was about the parsimony provision. And don't these defendants have a valid parsimony claim in light of fast track sentences for people who are similarly situated? I think they acknowledge that they need to be similarly situated. Right. They do, while they do need to be similarly situated, they are not similarly situated. While similarly situated as to criminal background and willingness to plead and offense for which they were pleading guilty. But there's also a resource determination that goes into the offer of guilty pleads of bargaining. How does that have anything to do with, no wait a minute. How does resource determination have anything to do with 3553? Because, when the government decides whether to offer someone a guilty plea or not to offer someone a guilty plea, there are many factors that are considered. I don't see it anywhere in 3553. 3553A. I mean, when we talk about step 3 of the guidelines, I don't see anything about the government resources in there. It's all about the defendant, right? It's all about the defendant. And the nature and characteristics of the crime. Okay. All about the defendant. Keep going, you can read the whole section. You're not going to find what you're pointing out. Well, there's also undue disparity. And what we're saying is this isn't undue disparity. I mean, it's the consistent argument that we have made in these cases that there are due and undue disparities between defendants. And if you are prosecuted in a district where the resources support a fast track program and that is the decision of the prosecutors, an unwarranted disparity does not arise. You know, I still don't understand five years after the Supreme Court decision in Booker exactly what substantive unreasonableness means. I may not be the only person around that has trouble figuring out what that means. But why isn't what the appellants here are talking about substantively unreasonable in light of the fact that it's okay in fast track districts to get X minus Y, but when you're in New Jersey, you get X? Because as with any plea bargain that's entered into by the government, there are many resource considerations on both sides and interests on both sides that are negotiated and a compromise is arrived at. And in legislating a limit on the fast track programs, as Congress originally did when the guidelines were mandatory and it was trying to address the degree of disparity that was occurring under the guidelines, it said, well, here's one that everyone keeps complaining about, so let's rein in this degree of disparity and limit it to a four-level program and structure it in a certain way. And the government then implemented and sent out the Attorney General's memo implementing But this is actually kind of a remarkable restriction on the government's discretion as it is to say you can only do so much negotiating and the guideline departure that goes along with this. What do you mean it's a restriction on the government? This is the government deciding what the government is going to do. It's Congress restricting the executive branch and saying, government, executive branch, when you negotiate and decide to give someone credit and move these cases along, we ask that you limit the amount of discretion and the amount of credit that you give them when you're entering into these plea bargains. Do you think it's extraordinary for the Congress to say, in effect, we'll let you do this, but you better do it fairly? I mean, that's the only thing that Congress is trying to get at, isn't it? Well, Congress is saying, here are the things that we consider to be important. Legitimate, right? Right. Well, I think it's presumed that the government uses its resources differently. So the fact that it focuses on one kind of case or gives deals to other kind of cases is not fair. Well, would you concede that this is an unusual program? Can you think of another program where the exact same crime, committed by virtually the same person, same background, everything, it doesn't take much to postulate a fellow and his twin, one of them ending up in Nebraska and the other in New Jersey, getting extraordinarily different sentences for no reason other than the fortuity of where they were arrested. Is there any other program in the prosecutorial pantheon of DOJ history that's anything like that? I mean, my point is that the reason that disparity is vivid is because it's programmatic. Right. And my question is, there's nothing else like it, is there? But it would be harder to see. You wouldn't know how the government is exercising its discretion to charge or not subject to a federal program where people explain them and they're limited. Precisely their point, I think. I think that's exactly their point. It's programmatic. It's the government of the United States saying, well, if you're a criminal in Nebraska, you get a lighter sentence than if you're the same criminal in New Jersey. And I understand their argument to be, hey, there's something constitutionally wrong with people getting different sentences based on nothing other than where they happen to have committed the crime or be arrested for it. Well, because it's not based on nothing at the end of the day. It's based on the fact that these places have demonstrated that they have extraordinary burdens and a set of priorities that they need to meet in order to prosecute all of the crimes that come under their jurisdiction. But you've shown us nothing that any standard or criterion that's been put forward in order to determine what districts get the fast track and which don't. So it seems to be haphazard and random, which would make it not fair. Is that correct? I mean, if you don't have a standard. It is according to the Attorney General's memo sets out the standard. And the standard, as I understood it from their briefs, is not in dispute as a fair standard. And we are not required as the government to show that, to put forward the reasons to support our program. And Heller v. Doe is very clear about this. It is the defendant's burden in a case that does not involve a suspect classification to show, to negate every conceivable rationale for the program. And the government has indicated that there are several conceivable rationales for this program to exist, all of which are rational. We are talking about rational. Could the government pass a criminal statute, say, if you get convicted east of the Mississippi, you spend 10 years, west of the Mississippi, 15? What's the difference between that and what they're... It depends on what they state the rationales. I mean, I really do... Well, they have no rational. They just say east, you get one, west, you get... What's the difference between that and what we have here? Yeah, rational. There's several differences between what we have there and here. And that's what every court who have considered this has found, that there are occasionally cases of extraordinary... There are extraordinary resource pressures on certain districts in the country. And there may arise periodically resource pressures on other districts to prosecute certain kinds of cases. Now, we would like to limit the amount, the effect that has on someone's sentence. But on the other hand, these resource problems don't exist everywhere. And so, while there are people who may get a break from their sentence in those instances, the actual applicable sentence, according to Congress, is applied everywhere else where they do not have these resource problems. Ms. Sedlowski, do you want to comment at all about the issues raised by Ms. Lewis on behalf of Sparza-Diaz? Well, I think that Judge Kugler was very clear that he would have sentenced the defendant. He was inclined to sentence the defendant to the top of the guideline range. But instead, he sentenced him, which was 71 months. Instead, he sentenced him to 60 months. That's a much greater reduction in the sentence than the four months the defendant was claiming he would have been due. And so, therefore, the defendant... And that he explicitly went back and forth with the defendant and clarified what certainty level there was, that we knew that there was some kind of intention to prosecute this person. And it was rather foggy. There were several reasons to think that they didn't know at that point that they intended to prosecute him. But in any event, the judge gave more than sufficient credit to him. Your position that the judge made a finding of fact, which is not arbitrary, as to when prosecution was going to go forward? The court exercises discretion to say, look, this is not clear. But in any case, you raise a good point. So I'm going to give you some credit. OK. Do you have anything else, Ms. Sulawski? No, Your Honor. Thank you very much. Ms. Von Hack? Thank you, Your Honor. Von Hoek or Von Hack? It's very easy. Van Hoek. Van Hoek. Hoek. Yeah. I'd like to start with Judge Cowan's analogy to the west and east of the Mississippi to further that. If west of the Mississippi, you get 15 years. I think it was the east coast that was kinder, maybe. And they get 10 years on the east side. And the statement for that is because they're down a prosecutor on the east side or because the jails were overcrowded on east of the Mississippi. The question then becomes, is that rational? And what does rational mean? Particularly, and all circuits that have come to address the issue this far, and even in our brief, have said, no, this is not a suspect classification. And we had not alleged it is a fundamental right. But the question becomes, when it embraces one's physical liberty, obviously, there's lots of case law at the Supreme Court that physical liberty is forfeited as a right when you're convicted of a crime. But when it does touch on your physical liberty, what do we do to that rational basis review? And whether or not it's entitled to something a little more, something with some teeth, or an intermediate review, or if simply in the context, it's still rational relation. And it is a rational basis, right? Isn't that, I mean, that is the review we're obligated to give this, right? Yes. But in the context, perhaps, it's not the same because of the touching on a fundamental right of liberty. Well, go to the question of whether being programmatic or not makes a difference. Would you agree that if there weren't a fast track program, but prosecutors in the Southern District of Texas said, look, we just can't handle these numbers right now, so we're going to deal with it in the following way. In fact, the way the fast track program organically developed, in the ordinary exercise of prosecutorial discretion, judgments were made. Would you be making the same constitutional argument you're making today? Absolutely not. Because the prosecutorial discretion exists, it exists always that obviously something is more serious, even within the state of New Jersey, a particular county that's busy may consider a crime less serious and may have to give better breaks. It happens all the time. Sure. So then what makes it unconstitutional for the Department of Justice and then Congress to give sanction to it to say, you know what, this is a problem that pops up in a lot of places, here's how we want you to guide that discretion. Instead of you having unfettered discretion in this regard, we're going to give you some guideposts for how to deal with that discretion. Does the addition of guideposts and of authorization through the central authority of DOJ now convert that prosecutorial discretion, which you concede is appropriate, into something unconstitutional? I think it's because then it's imported into the guidelines. And when it's imported into the sentencing process and it finds its way into Chapter 5 and then has to go through all of what the 3553A factors, which never mention government or prosecutorial convenience or resources. The language is very clear that disparity concerns only the defendant, the individual defendants, their conduct, whether or not it be similar, and their prior records and whether or not that be similar. And once you put it into 3553A through the sentencing process, through the guidelines, and you're butting heads with the parsimony principle, which says no sentence, a sentence should be no greater than necessary, you have a problem. Because, obviously, in those other districts, those sentences were considered no greater than necessary. Then how then is this, then we have this population that is over-sentenced, which is, in fact, the injury, in fact, here, that these defendants that we represent received were over-sentenced under the parsimony principle. Okay. Thank you very much. Thank you. Ms. Lewis, do you have anything else to add? Sure. Again, I would just ask the court to reread Judge Kugler's comments. It's not clear, again, that he only took into consideration the argument that was made on behalf of Mr. Esparza-Diaz with respect to the time credit. There were other arguments and mitigation arguments presented during the sentencing hearing, and Judge Kugler does state that he considers the credit, but there were other issues made, arguments made, and it doesn't state how much. And taking that in conjunction with his prior comments, it is clear to us that he did not make the appropriate finding in this case. Thank you. Thank you. Thank you very much. We thank all counsel for the case. It was very well argued, and we will take the matter under advisement.